## FOPPIANO *v.* SPEED.

## SAME *v.* SAME.

### ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

Nos. 67 and 68. Argued November 9, 1905.—Decided December 4, 1905.

Since the passage of the Wilson Act of August 8, 1890, 26 Stat. 313, there is a distinction between the right to sell intoxicating liquors on vessels engaged in interstate commerce and other businesses conducted on such vessels.

Under the provisions of that act a State may, in the exercise of its police powers, exact a license fee as a condition of the right to sell intoxicating liquor over the bar on board of a steamboat while within the boundaries of the State, notwithstanding such boat is navigating the Mississippi River and is engaged in interstate commerce.

Such a license fee is not a tax on the boat, crew, passengers or liquor sold, nor a fee for navigating the river, the imposition of which would be an interference with the commerce clause of the Constitution, nor does it in any way violate the freedom of the navigation of the Mississippi River as guaranteed by treaties and statutes.

The fact that the boat is personal property owned by a corporation of another State does not make it a part of the territory of that State, and exempt those thereon from the police regulations of another State in regard to the sale of intoxicating liquor while within the boundaries of the latter State.

THE plaintiff in error was compelled to pay for a license to sell liquors while on a ferryboat at the city of Memphis, in the State of Tennessee, the ferryboat plying between ports in the States of Arkansas and Tennessee. The license was demanded

by the clerk of the County Court of Shelby County, by virtue of the following state statute:

"Liquor Dealers . .

"Persons selling beer or any quantities of liquor on steamboats, flatboats, or any other vessel, or water craft, or from railroad cars, shall pay a tax, each, in lieu of all other taxes, to be paid in any county they may elect, per annum, two hundred dollars."

He denied his liability to pay because, as he averred, he was engaged in interstate commerce, and was not subject to be taxed by the State in such case. The taxing officers insisting, he paid the license for the past years 1901, 1902, 1903, and also for the then coming year of 1904, under protest, and, to avoid the taking of his property under a distress warrant, and he then commenced these actions to recover the money so paid. They both involve the same question, one action being brought to recover for the back taxes paid and the other for the taxes paid for the future, from January 1, 1904. Judgment went against him in the trial court, which was affirmed in the Supreme Court of the State. 82 S. W. Rep. 222. The plaintiff brings the cases here by writs of error.

The record shows that Speed, the defendant in error, being clerk of Shelby County, Tennessee, undertook to assess the plaintiff in error, under the Tennessee statute, and the plaintiff in error, denying his liability to pay any tax, the parties agreed upon the following facts for the purpose of having the question presented judicially and determined by the court, under the practice in Tennessee:

"That the West Memphis Packet Company is, and has been for more than fifteen years last past, a corporation duly created and existing under and in accordance with the laws of the State of Arkansas, located and having its situs at West Memphis, in the county of Crittenden, in the State of Arkansas, situated just opposite the lower end of the city of Memphis, across the Mississippi River, having power by its charter to buy or build

and own one or more steamboats, barges and flatboats, and
other water craft, to be used in transporting freight and pas-
sengers on the Mississippi River, and the lakes, bayous and
other navigable streams connected therewith, within the limits
of the State of Arkansas; and during the time the said James
Foppiano was engaged in selling beer and liquors, as herein
stated, the said West Memphis Packet Company was in the
exercise of its corporate powers and privileges, and engaged
continuously in commerce between the city of Memphis, in
the State of Tennessee, and points contiguous thereto, situated
along the Arkansas shore of the Mississippi River.

"For more than fifteen years the West Memphis Packet
Company has been operating a ferry across the Mississippi
River from Hopefield Point, in Crittenden County, Arkansas,
and other points adjacent thereto in the State of Arkansas, to
and from the State of Tennessee, under licenses to operate
such ferry, regularly granted and issued to it, the West Mem-
phis Packet Company, by the County Court of Crittenden
County, Arkansas, the tribunal authorized by the constitution
and laws of the State of Arkansas to grant and issue such
licenses—and under such licenses the West Memphis Packet
Company had been making landings regularly, at its dock, at
the wharf in the city of Memphis, on the Mississippi River, and
there receiving and discharging freight and passengers trans-
ported or to be transported by means of such ferry along and
across the Mississippi River. It had made but one landing
regularly in the course of such business in the State of Ten-
nessee, and two or more in the State of Arkansas.

"For more than four years last past the West Memphis
Packet Company has used and employed the steamboat Chas.
H. Organ as its regular ferryboat, in carrying on the ferry
aforesaid, under its said licenses, and such steamboat had
made stated regular trips during all that time, between Mem-
phis and the points aforesaid, in the State of Arkansas, con-
stituting such ferry landings.

"The steamboat Chas. H. Organ was owned by the West

Memphis Packet Company, and was duly enrolled and licensed as a steam vessel, to navigate the Mississippi River and its tributaries, under the laws of the United States regulating the coasting trade, and for other purposes, in the custom house at Memphis—Memphis being the nearest port of the United States to the residence of the West Memphis Packet Company, and the home port of the said steamboat for each of the said years 1901, 1902 and 1903, and before that time.

"Ever since the West Memphis Packet Company began the keeping and maintaining of a ferry across the Mississippi River, as before stated, a bar has been, and was during the years 1901, 1902 and 1903, kept and maintained on the steamboat it used and operated for that purpose, by some individual to whom it rented the privilege of keeping such bar, and carrying on at the same the sale of beer and liquors, by retail, to persons transported, or to be transported, or upon the said steamboat.

"During the years 1901, 1902 and 1903, James Foppiano was the lessee of the West Memphis Packet Company, and rented such bar on the steamboat Chas. H. Organ from it, and at such bar, during the said time, when the boat was in transit along or across the river, or when temporarily at the landings on the one side or the other of the river, he made sales by retail of beer and liquors to persons transported, or being transported, or to be transported, upon such steamboat, or who were thereon and applied to make purchases. And for the said years 1901, 1902 and 1903 he paid no taxes on such business, and took out no licenses therefor.

"For carrying on the said business for the said years 1901, 1902 and 1903, respectively, in the manner aforesaid, the defendant, Robert A. Speed, as clerk of the County Court, insists that the said James Foppiano was required to, and should have taken out a license for each year, and also, was required to, and should have paid the tax for each year, prescribed by the law levying such taxes, and the costs and charges therefor collected by him as before stated, and not having done so,

that he was authorized and required by law to make such collections, and is not liable to repay the same.

"The said James Foppiano denies that under the facts he was required by law to take out any licenses, or pay any taxes, for carrying on the said business for the said years 1901, 1902 and 1903, respectively, or either of them, in the manner aforesaid. He denies that the said Robert A. Speed was authorized or required by law to collect either the taxes collected by him in the manner aforesaid, or the costs or charges aforesaid, or any part thereof, and claims that all such sums have been illegally exacted of and collected from him and against his will, and that he is entitled to recover them back."

*Mr. Wm. M. Randolph,* with whom *Mr. George Randolph* and *Mr. Wassell Randolph* were on the brief, for plaintiff in error submitted:

While on board the steamboat navigating the Mississippi River between Arkansas and Tennessee, engaged in selling beer and liquors, plaintiff in error was outside the jurisdiction of Tennessee for the purposes of license and taxation, and was exempt from license and taxation by that State under the Constitution, treaties and laws of the United States.

The history of the United States shows that the Mississippi River is a great national highway and cannot be under the control, or become the property, of any one State. *Packet Co. v. Bridge Association,* 38 Illinois, 478. It forms the boundary between Tennessee and Arkansas, and between many other States, and a vast amount of commerce is conducted on it among the several States, and it necessarily falls under the control of Congress, which, to a large extent, has regulated commerce upon it. Tennessee, therefore, cannot license, tax or regulate in any way the navigation upon, or the use of it. *Passaic Bridge Cases,* 3 Wall. 792 (App); *The Daniel Ball,* 10 Wall. 557, 563; *The Montello,* 20 Wall. 439; *Miller* v. *New York,* 109 U. S. 395; Cooley's Const. Lim., 6th ed., ch. 16, p. 728; *The Robert W. Parsons,* 191 U. S. 25.

The Packet Company, a corporation of Arkansas, owned and lawfully employed the steamboat as a ferry boat, and in interstate commerce between Arkansas and Tennessee, in navigating the Mississippi River, and the steamboat, when on the Tennessee side of the main channel of the river, or landed at Memphis, was a part of the territory of Arkansas, and plaintiff in error selling beer and liquors upon the steamboat, was locally outside the jurisdiction of Tennessee, and his business could not be made a privilege, and he was not subject to be licensed or taxed by the State for carrying on the business.

As the Packet Company was created under the laws of Arkansas and existed only in that State as a corporation, and had not complied with the laws of Tennessee regulating foreign corporations, and the business carried on by them within the State, it could be taken notice of or recognized in Tennessee, if at all, only as a matter of comity. *Bank* v. *Earle*, 13 Pet. 519; *Talmadge* v. *North American Co.*, 3 Head, 337; *State* v. *Phœnix Ins. Co.*, 92 Tennessee, 420; *St. Louis* v. *Ferry Co.*, 11 Wall. 429; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 209.

The steamboat was duly enrolled and licensed under the acts of Congress regulating the coasting trade, and thereby authorized to navigate the navigable waters of the United States, including the Mississippi River.

The Packet Company also had licenses from the proper County Court of Arkansas to maintain and keep up a ferry across the Mississippi River between Tennessee and Arkansas, and had been for many years carrying on such ferry, and engaged in that way in interstate commerce between those States. The carrying on of the ferry, and the commerce was lawful. Kirby's Digest of the Statutes of Arkansas (1904), §§ 3556, 3559–3562 and 3565, 3566; Shannon's Code of Tennessee (1894), §§ 1697, 1698; *Memphis* v. *Overton*, 3 Yerger, 387; *Conway* v. *Taylor*, 1 Black, 603; Gould on Waters, § 133; *Gibbons* v. *Ogden*, 9 Wheat. 1, 189; *Organ* v. *M. & L. R. R. Co.*, 51 Arkansas, 271, 272; 1 Farnham on Waters, § 12a.

The steamboat, licensed and enrolled under the laws of the

United States, for national purposes, was a creature of Congress, and subject immediately to the jurisdiction of the United States. *White's Bank* v. *Smith,* 7 Wall. 646, 655; *The Lottawana,* 21 Wall. 558, 577; *Sherlock* v. *Alling,* 93 U. S. 96, 103; *Providence & N. Y. Co.* v. *Hill Mfg. Co.,* 109 U. S. 578.

Under international law, vessels and boats navigating the oceans, seas and other public navigable waters belong to the sovereignty of which their owners are citizens or subjects, and they form a part of the territory of such sovereignty.

They constitute, wherever they are, a part of the territory of the sovereignty to which they belong. Wharton's Conflict of Laws, § 356; Henry's Adm. Jurisdiction and Proc. § 37, p. 107; *Wilson* v. *McNamee,* 102 U. S. 574; *The Lamington,* 87 Fed. Rep. 754; 1 Kent's Commentaries, 26; *St. Clair* v. *United States,* 154 U. S. 150; *The Scotia,* 14 Wall. 184, 185.

The same principle has been applied as between the States of the American Union. *Crapo* v. *Kelly,* 16 Wall. 610; *In re Clyde S. S. Co.,* 134 Fed. Rep. 95; *McDonald* v. *Mallory,* 77 N. Y. 546; *Hays* v. *Pacific Mail S. S. Co.,* 17 How. 596; *Morgan* v. *Parham,* 16 Wall. 471; *Transportation Co.* v. *Wheeling,* 99 U. S. 273, 282; *Pullman Co.* v. *Pennsylvania,* 141 U. S. 23; Rev. Stat. §§ 4141, 4312, 4334.

For exact point applicable to this case see *International Nav. Co.* v. *Lindstrom,* 123 Fed. Rep. 475, where it was held that a steamship, owned by a corporation of New Jersey, was a vessel of that State, and subject to its laws, notwithstanding the registry of the steamship in New York, reversing 117 Fed. Rep. 170. And see also *The Mary Chilton,* 4 Fed. Rep. 847; *The E. A. Barnard,* 2 Fed. Rep. 712; *The Jenny B. Gilkey,* 19 Fed. Rep. 127; *The Sarah Starr,* 1 Sprague Rep. 453; *The Martha Washington,* 1 Clifford's Rep. 466; *The New Brunswick,* 125 Fed. Rep. 568.

All subjects over which the sovereign power of a State extends are objects of taxation, but those over which it does not extend are, upon the soundest principles, exempt from taxation. *McCulloch* v. *Maryland,* 4 Wheat. 429; *State Tax*

on Foreign-held Bonds, 15 Wall. 300, 319; Railroad Co. v. Jackson, 7 Wall. 262; Erie R. R. Co. v. Pennsylvania, 153 U. S. 664; Bridge Co. v. Henderson City, 173 U. S. 609, 613; Ferry Co. v. Kentucky, 188 U. S. 395; Railroad Co. v. Williams, 101 Tennessee, 146; St. Clair County v. Transfer Co., 109 Fed. Rep. 741; S. C., 192 U. S. 454; Johnson v. Southern Pacific, 196 U. S. 1.

No instrument employed in interstate commerce can be taxed by a State. Covington Bridge Co. v. Kentucky, 154 U. S. 212. A State cannot tax a trader licensed by the United States. Foster v. County Commissioners, 7 Minnesota, 140. Violations of the criminal laws on steamboats on the Mississippi River within the boundaries of a State may be punished just as if committed on land in the State. United States v. Bevans, 3 Wheat. 336; McFarland v. McKnight, 6 B. Mon. (Ky.) 505; In re Mattson, 69 Fed. Rep. 535; McFall v. Commonwealth, 2 Metc. (Ky.) 394; 1 Farnham on Waters, §§ 11, 19, 20.

It was held that the act was void under the Constitution, Article II, sec. 17.

A law of a State requiring an agent of a foreign manufacturer to take out a license to sell goods and pay a tax therefor is an exercise of the taxing power and not of the police power; and this court is not bound by the decision of the highest court of the State, in which the license is required and the tax levied, that the power exercised in passing the law is the police power of the State, and not its power of taxation, but will decide that question for itself. Brennan v. Titusville, 153 U. S. 289.

The licenses and taxes were illegal and void, not only as to the Packet Company, but also as to plaintiff in error. A tax on the occupation of the importer is the same as a tax on the imports. Brown v. Maryland, 12 Wheat. 444; Norfolk & West. Ry. Co. v. Sims, 191 U. S. 441. A tax on the income of United States securities is a tax on the securities. Weston v. Charleston, 2 Pet. 449. Income from an official position cannot be taxed, if the office itself cannot. Dobbins v. Com-

*missioners,* 16 Pet. 435. A duty on a bill of lading is the same thing as a duty on the article shipped. *Almy* v. *California,* 24 How. 169. A tax on the income from interstate commerce is a tax upon the commerce itself. *Philadelphia S. S. Co.* v. *Pennsylvania,* 122 U. S. 326; *Leloup* v. *Mobile,* 127 U. S. 640. A tax on the amount of the sales of goods made by an auctioneer is a tax upon the goods sold. *Cook* v. *Pennsylvania,* 97 U. S. 566.

A tax on income of real estate is a direct tax on the land, and a tax on income of negotiable bonds, issued by a municipal corporation, is a tax on the power of the State and its instrumentalities to borrow money. *Income Tax Case,* 157 U. S. 429.

Commerce is carried on through persons, and a tax having the effect of diminishing personal intercourse is a tax on commerce. *Lin Sing* v. *Washburn,* 20 California, 534.

A tax on the business of transporting goods from State to State is a tax upon the commerce between the States. *Erie Ry. Co.* v. *State,* 2 Vroom (N. J.), 531.

A charge for a license to sell beer and liquors is an indirect tax on the beer and liquors sold, and a tax upon the beer and liquors is a tax on the persons who drink them. *License Cases,* 5 How. 575, 576.

A tax on stage companies for passengers carried out of the State is a tax on the passengers for the privilege of passing through the State. *Crandall* v. *Nevada,* 6 Wall. 35.

A tax upon the agent selling goods is a tax on the goods sold. *Welton* v. *Missouri,* 91 U. S. 275; *Robbins* v. *Shelby Taxing Dist.,* 120 U. S. 489; *Kehrer* v. *Stewart,* 197 U. S. 65. A tax on freight transported from State to State is a tax on the commerce. *State Freight Tax,* 15 Wall. 232. A tax upon receiving and landing passengers or freight from a boat or vessel is a tax on the commerce. *Ferry Co.* v. *Pennsylvania,* 114 U. S. 196. A tax on a passenger carried on a ship or boat is a tax on the business carried on by the ship or boat. *People* v. *Compagnie Générale,* 107 U. S. 59; *Passenger Cases,* 7 How. 283. A tax on the gross receipts of railroads for the carriage of freight

and passengers into, out of, or through a State, is a tax on interstate commerce. *Fargo* v. *Michigan,* 121 U. S. 230.

As to state tolls on the Cumberland Road being void, see *Searight* v. *Stokes,* 3 How. 151; *Neil* v. *Ohio,* 3 How. 720; *Achison* v. *Huddleston,* 12 How. 293.

The licensing and taxing of plaintiff in error by Tennessee for selling beer and liquors on the steamboat while that boat was used as a ferryboat and was engaged in interstate commerce upon and along the Mississippi River between Arkansas and Tennessee, was a regulation of commerce upon the river, and between Arkansas and Tennessee, and in conflict with the power of Congress under the Constitution to regulate such commerce, and in violation of the Constitution, and void. *Atl. & Pac. Tel. Co.* v. *Philadelphia,* 190 U. S. 160; *Leloup* v. *Mobile,* 127 U. S. 648; *Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Gilman* v. *Philadelphia,* 3 Wall. 724; *Mobile* v. *Kimball,* 102 U. S. 702; *The Roanoke,* 189 U. S. 194, 199; *Wabash Ry. Co.* v. *Illinois,* 118 U. S. 558, 575; *United States* v. *Holliday,* 3 Wall. 407, 416; *Head Money Cases,* 112 U. S. 580, 591; *United States* v. *43 Gallons of Whisky,* 93 U. S. 194; *Harman* v. *Chicago,* 147 U. S. 396; 1 Farnham on Waters, § 19b.

If there were regulations by Congress, they governed, and it has not been claimed in this case that they had been violated. If there were none, then it was to be conclusively presumed that Congress did not deem any necessary, and sanctioned the renting of the bar and the selling of the beer and liquors by plaintiff in error on board the boat while it was employed as a ferry and used in interstate commerce. *Hall* v. *DeCuir* 95 U. S. 489, 494.

Plaintiff in error was actually engaged in the navigation of the boat. It is enough that the person employed on board the ship or steamboat, in whatever capacity, has to do with its equipment, or preservation, or renders services pertaining to the business of navigation or commerce, and that such services are necessary, or at least conducive, to the preservation of the ship, or the steamboat, or the welfare of those em-

ployed in its navigation, or those being transported or accommodated on board the ship or steamboat, to constitute him a valuable instrument used in the navigation and commerce.

It cannot be held that the keeping of the bar on the boat is completely outside the object and purposes of navigation and commerce, or that plaintiff in error took no part, and rendered no assistance in the equipment or preservation of the steamboat, or its business of navigation or commerce, or that his services were not necessary, or were not conducive to the preservation of the steamboat, or the comfort or welfare of those on board, to be transported or accommodated, or those employed in the actual management and operation of the boat. 1 Conkling's Adm., 107, 109; 2 Parsons on Ship. & Adm., 182; *Spinetti* v. *Steamship Co.*, 80 N. Y. 71; *State* v. *Frappart*, 31 La. Ann. 340; *McCall* v. *California*, 136 U. S. 104, 111.

As to state tonnage and similar statutes held void because affecting interstate commerce, see cases *supra* and *Steamship Co.* v. *Port Wardens*, 6 Wall. 31; *State Tonnage Tax Cases*, 12 Wall. 204; *Peete* v. *Morgan*, 19 Wall. 204; *Cannon* v. *New Orleans*, 20 Wall. 577; *Moran* v. *New Orleans*, 112 U. S. 69; *New York* v. *Miln*, 11 Pet. 103; *Chy Lung* v. *Freeman*, 92 U. S. 275; *Minnesota* v. *Barber*, 136 U. S. 313; *Bowman* v. *Chicago*, 125 U. S. 488; *Leisy* v. *Hardin*, 135 U. S. 108; *Sinnot* v. *Davenport*, 22 How. 227; *Foster* v. *Davenport*, 22 How. 244; *Pickard* v. *Pullman Co.*, 117 U. S. 34; *Allen* v. *Pullman Co.*, 191 U. S. 171; *Kelley* v. *Rhoads*, 188 U. S. 1; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Guy* v. *Baltimore*, 100 U. S. 434; *Walling* v. *Michigan*, 116 U. S. 446, 455; *Brummer* v. *Rebman*, 138 U. S. 78; *Stockard* v. *Morgan*, 185 U. S. 27; *Cent. of Georgia Ry.* v. *Murphy*, 196 U. S. 194.

Tennessee by recognizing the Northwest ordinance and free navigation of the Mississippi River has precluded itself from demanding a license of, and taxing the plaintiff in error, for selling beer and liquor on a vessel engaged in interstate commerce and navigating that river and in undertaking to do so it

has deprived him of a privilege and immunity secured to its citizens, and has abridged his privileges and immunities as a citizen of the United States, and has deprived him of his liberty and property without due process of law, and has denied to him the equal protection of its laws, and thus, has violated the Constitution of the United States.

Plaintiff in error was probably the first victim whose offense consisted in, or liability rested on the sale of liquors and beer on a steamboat, duly enrolled and licensed for the coasting trade, and engaged in navigation and commerce on the Mississippi River. The omission to license and tax the selling of beer and liquors on boats and vessels on the Mississippi River for so long a time was a practical construction by the people and government, of the constitution of Tennessee, as to the right of the free use of the Mississippi River, and is entitled to as much consideration, and the same effect as the judicial decisions of its courts. *Stuart* v. *Laird*, 1 Cranch, 299; *Martin* v. *Hunter*, 1 Wheat. 304, 351; *Cohens* v. *Virginia*, 6 Wheat. 264, 418; *Bank* v. *Halstead*, 10 Wheat. 51, 63; *Ogden* v. *Saunders*, 12 Wheat. 290; *Minor* v. *Happersett*, 21 Wall. 162, 177; *Union Ins. Co.* v. *Hoge*, 21 How. 35, 68; *Edwards* v. *Darby*, 12 Wheat. 206; *Brown* v. *United States*, 113 U. S. 568; Cooley's Const. Lim., 6th ed., ch. 4, p. 81; *New York Indians*, 5 Wall. 767.

In interstate commerce questions intoxicating liquors stand upon the same footing and are treated just as any other article of commerce is treated. *Bowman* v. *Chicago* and *Leisy* v. *Hardin*, *supra*; *Lyng* v. *Michigan*, 135 U. S. 161; *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Mugler* v. *Kansas*, 123 U. S. 423.

The provision in the Wilson Act, 26 Stat., 728, p. 313, that intoxicating liquors transported into any State or remaining therein shall, upon arrival, be subject to the operation and effect of the laws of such State, enacted in the exercise of its police powers, to the same extent and in the same manner as though produced therein, does not apply to this case. See *In re Rahrer*, 140 U. S. 545; *Rhodes* v. *Iowa*, 170 U. S. 412; *Vance* v. *Vandercook Co.*, 170 U. S. 438; *Norfolk & Western Ry.*

*Co.* v. *Sims,* 191 U. S. 441; *Am. Exp. Co.* v. *Iowa,* 196 U. S. 133; *Cook Co.* v. *Marshall,* 196 U. S. 261.

*Wiggins' Ferry Co.* v. *East St. Louis* does not apply to this case.

*Mr. Charles T. Cates, Jr.,* Attorney General of the State of Tennessee, for defendant in error:

There is a well marked distinction between the use of the waters of a river for the purposes of commerce and navigation and the sale of liquor by retail on a steamboat engaged in carrying freight and passengers from one side of such river to the other. The waters of the Mississippi River are free to the steamboat and no impost can be or is sought to be placed thereon, or on its right to receive and discharge passengers and freight; but whenever such steamboat enters the territorial limits of the State, both it and those thereon become subject to the police power of the State, which was not granted to the General Government, but reserved for the benefit, well-being and happiness of the citizens of the State.

The western boundary of Tennessee is now the middle thread of the main channel of said river. *Moss* v. *Gibbs,* 10 Heisk. 283; *Stockley* v. *Cissna,* 119 Fed. Rep. 812; *Missouri* v. *Kentucky,* 11 Wall. 395. The jurisdiction and legislative powers of the State are coextensive with its territory. *United States* v. *Bevans,* 3 Wheat. 386; *Rhode Island* v. *Massachusetts,* 12 Pet. 733.

The license fee or tax is not sought to be imposed upon the Packet Company, either for carrying on the business for which it was chartered, or for carrying freight or passengers, or upon its right to transport liquors on its ferryboats and bring them into the State of Tennessee.

But when either the Packet Company or its lessee brings liquors into the State of Tennessee and offers them for sale, *eo instanti, Emert* v. *Missouri,* 156 U. S. 320, both the liquors and the act of selling them become subject to the operation of the laws of Tennessee. The right to sell intoxicating liquor

is not a privilege of United States citizenship under the "privileges and immunities" clause of the Fourteenth Amendment. *Bartemeyer* v. *Iowa*, 18 Wall. 133; *Giozza* v. *Tiernan*, 148 U. S. 661.

The regulation of the liquor traffic is peculiarly within the police power of the States. That power embraces all such legislation as will preserve and promote the public welfare by prohibiting all things hurtful to the comfort, safety, and welfare of society; it extends over a wide range of subjects; the public health, the public morals and the public welfare, under any one of which the regulation and restriction of the sale of intoxicating liquors would readily fall. *Theilan* v. *Porter*, 14 Lea (Tenn.), 626; *Webster* v. *State*, 110 Tennessee, 491, 504, 505; *Bartemeyer* v. *Iowa*, 18 Wall. 133; *Boston Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Eilenbacker* v. *Plymouth Co.*, 134 U. S. 31.

A State may regulate fishing in the soil below low-water mark. *Smith* v. *Maryland*, 18 How. 76. A State may protect fish in a bay within its borders. *Manchester* v. *Massachusetts*, 139 U. S. 261.

Plaintiff in error's business is not protected by the commerce clause of the Federal Constitution.

The sale of liquors at retail, within the territorial limits of a State, is not interstate commerce, and within the protection of the Federal Constitution. Nor are sales thereof at retail under the protection of the Federal Government. The regulation of the manufacture and sale of intoxicating liquors is peculiarly under the control of the States and within their police power, which has not been surrendered to the Federal Government. Cases *supra* and *Foster* v. *Kansas*, 112 U. S. 201; *Kidd* v. *Pearson*, 128 U. S. 1.

As to the original package cases, where goods are imported into a State and become intermingled with the general mass of property therein and exposed for sale, they are no longer to be considered the subjects or objects of interstate commerce. *Emert* v. *Missouri*, 156 U. S. 296; *May* v. *New Orleans*, 178 U. S. 496. And as to intoxicating liquors the Wilson Act,

26 Stat. 728, removes all impediments to the enforcement of the state laws in respect of their sale and taxation even when imported in original packages, and withdraws from the protection of the commerce clause of the Federal Constitution persons and corporations bringing liquor into a State for the purpose of sale without regard to the condition or means by which such liquors were held or sold. *In re Rahrer,* 140 U. S. 545; *Vance* v. *Vandercook Co.,* 170 U. S. 446; *Rhodes* v. *Iowa,* 170 U. S. 412. Even if it be conceded that the liquors were sold and dispensed by plaintiff in error on a steamboat either while it was in transit or fast at its wharf in Memphis, they were, under the Wilson Act, within the operation of the laws of Tennessee and subject both to its police and taxing power.

The fact that these liquors were retailed upon a boat engaged in interstate commerce, does not make the retailing itself interstate commerce. Many agencies employed in interstate commerce are subject to the proper police power of the State. A state statute prohibiting the running of trains within the State on Sunday is not void as an interference with interstate commerce. *Hennington* v. *Georgia,* 163 U. S. 299. So as to a statute requiring railroads to stop their trains each way daily, Sundays excepted. *Lake Shore Ry. Co.* v. *Ohio,* 173 U. S. 285, and as to one requiring engineers and other persons engaged in the driving and management of railroad trains passing through the State to submit to examinations by local boards. *Smith* v. *Alabama,* 124 U. S. 465; *Richmond R. R. Co.* v. *Patterson,* 169 U. S. 311; *Missouri &c. R. R. Co.* v. *Haber,* 169 U. S. 633; *Nashville &c. R. R. Co.* v. *Alabama,* 128 U. S. 96. Also as to one requiring the heating of passengers cars. *New York &c. R. R. Co.* v. *New York,* 165 U. S. 628. A regulation by a city of the speed of railroad trains within the city limits is not, as to interstate trains, unconstitutional. *Erb* v. *Morasch* 177 U. S. 584. It is entirely within the power of a State to provide separate coaches for the accommodation of the white and colored races. *L. & N. R. R. Co.* v. *Mississippi,* 136 U. S. 589; *Plessy* v. *Ferguson,* 163 U. S. 537; *Smith* v. *State,*

100 Tennessee, 494. See also *Pittsburgh &c. Coal Co.* v. *Louisiana,* 156 U. S. 590, 600.

As to *State* v. *Frappart,* 31 La. Ann. 340, see *Selectmen* v. *Spalding,* 3 La. Ann. 87; *Cessill* v. *State,* 40 Arkansas, 501; *State* v. *Blands,* 101 Mo. App. 618; *La Norris* v. *State,* 13 Tex. App. 33, 42.

The State is not estopped to exercise the power vested in her to regulate and control the liquor traffic upon that part of the Mississippi River within her territory, because for a long number of years she did not attempt to exercise any authority over the liquor traffic upon said river, or because that under the express provision of sec. 16, of chr. 257, of the Acts of 1903, the State declared that the taxes upon privileges imposed by said act, "shall not apply to any person, firm or corporation engaged in interstate commerce."

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The plaintiff in error contends that he rented the bar privilege from the company owning the ferryboat, and that he conducted the business of selling liquors over the bar on the boat pursuant to his lease, and while doing so was engaged in interstate commerce, and therefore was not liable in any manner to be taxed on account of conducting his business in the way he did, while within the boundaries of the State of Tennessee.

There is a distinction to be observed between the business of the plaintiff in error in selling intoxicating liquors and any other business which might have been conducted by him on the ferryboat under the same circumstances. The general right of the States to regulate or prohibit the sale of intoxicating liquors within their borders is not denied, but how far they could prohibit the entrance of the liquors, or their sale, after having been brought into the State, has been a subject of examination and decision within late years by this court. *Bowman* v. *Chicago & Northwestern Railway Co.,* 125 U. S. 465; *Leisy* v. *Hardin,*

135 U. S. 100; *In re Rahrer,* 140 U. S. 545; *Rhodes* v. *Iowa,* 170 U. S. 412; *Vance* v. *W. A. Vandercook Company, No. 1,* 170 U. S. 438. The result of the *Bowman case* and *Leisy case* together was to uphold the right of a party to send intoxicating liquors into another State and sell the same in such State in their original packages. The decisions in those cases were followed by the passage of an act of Congress, commonly known as the Wilson Act, approved August 8, 1890, 26 Stat. 313, which provided that intoxicating liquors, when transported into another State or Territory, should, upon arrival therein, be subject to the operation and effect of the laws of such State or Territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquors had been produced in said State or Territory. This act was held to be constitutional in the case of *In re Rahrer,* 140 U. S. 545, and that by virtue of said act, state statutes might operate upon the original packages of intoxicating liquors before sale in the State. *Rhodes* v. *Iowa,* 170 U. S. 412, and *Vance* v. *W. A. Vandercook Company, No. 1,* 170 U. S. 438, held that the state statute must permit the delivery of the liquors to the party to whom they were consigned within the State, but that, after such delivery, the State had power to prevent the sale of the liquors, even in the original package.

If the liquors kept for sale at the bar on the ferryboat had been consigned to the plaintiff in error from Arkansas, addressed to him at Memphis, although the plaintiff in error would have had the right to a delivery of the liquors to him at the wharf in Memphis, yet, under the act of Congress, as construed by this court, the State could then at once have prohibited absolutely the sale thereof, even in original packages. Of course, if it could totally prohibit such sale, it could permit the sale conditionally. In this case there is no consignment to any one, but we do not see that the distinction is material. The liquors were owned by the plaintiff in error while on the boat, and carried along from port to port, and to be used on the boat as the demand at the bar made necessary. The thing which

the plaintiff in error did was to sell the intoxicating liquors on this ferryboat when temporarily at the wharf in Memphis, or, within the boundaries of the State, to persons then on the boat, and it was on account of these sales that he was compelled to take out a license and pay the tax therefor. Although there was no consignment of the liquor, yet it was in the possession of the plaintiff in error on the boat, within the State, the same as if he had received it therein on a consignment to him from outside the State, and had taken portions of it while in the State, sold it to different persons then on the boat, and those persons had then and there taken and drank the liquor, and then and thus the transaction had been commenced and ended. The law provided no tax on any liquor in any way, but it made it necessary for the plaintiff in error to get a license for this sale of liquor within the State. There was no tax levied upon the boat or crew, nor upon any of the passengers, nor on any portion of the property of the company, nor on the freight carried by it on the boat. Neither the boat nor its officers nor crew were subjected to the payment of any fees for navigating the waters of the river. The Supreme Court of the State observed that the case did not show that the charter permitted the company to maintain a bar on board its boat, nor that the liquors sold in Tennessee came from any other State; and it may be stated here that there was no proof that the liquors were sold in original packages, but as they were sold over the bar there might, perhaps, be a presumption that they were not so sold. Without deciding the case on these grounds, the state court, interpreting the above-mentioned act of Congress, and believing that it was following the decisions of this court, held that, by virtue of that act, the State had the right to exact a license as a condition precedent to the exercise of the right on the part of the plaintiff in error to sell intoxicating liquors over the bar on board the boat, while within the boundaries of the State of Tennessee. We think the Supreme Court was right in that view of the case.

The counsel for plaintiff in error, in a most elaborate brief,

exhibiting very great learning and industry, has sought to show that the plaintiff in error was entitled to the free navigation of the Mississippi River, under various treaties and compacts, as well as by the National Constitution, and to support that contention has gone back to a time prior to the war between Great Britain and France in 1756, and has cited many cases in this court to maintain his position. That the navigation of the Mississippi River is free to every citizen of the United States is a fact not to be questioned at this time. No one could successfully dispute it, but we think that question is not involved in this case. When the ferryboat entered the boundaries of the State of Tennessee, and fastened up at the wharf in Memphis, and the plaintiff in error then sold liquors to customers as they asked for them, he became subject to the police laws of that State regarding the sale of intoxicating liquors. Enforcing that law, even if it did incidentally affect the free navigation of the Mississippi River, is justified under the act of Congress and the decisions of this court interpreting the same. As the boat is free to be navigated without molestation, let or hindrance, on account of any fees, taxes, licenses or otherwise, it cannot be held that the navigation of the Mississippi River is not free, because while within the boundaries of the State of Tennessee and under the authority of the act of Congress, the barkeeper on the boat is prohibited from there selling the liquors he carries with him, without first having paid the license demanded by the state statute.

The case of *State* v. *Frappart*, 31 La. Ann. 340, was decided in 1879, before the act of Congress was passed, and is, therefore, not applicable to the facts of this case.

The plaintiff in error also contends that when the Packet Company, being a corporation of the State of Arkansas, employed the ferryboat in interstate commerce between the States of Arkansas and Tennessee, the boat was a part of the territory of Arkansas, and the plaintiff in error in selling liquors upon the boat, was located outside the jurisdiction of the State of Tennessee, even though, in fact, he sold the liquors while the

boat was tied to the wharf in the city of Memphis.   Many cases
are cited in counsel's brief where tangible property was directly
taxed by the State, and where, it was held, that the State had
no jurisdiction, because, although the property was tempora-
rily within the State, it was not there permanently.   *Hays* v.
*Pacific Mail Steamship Co.*, 17 How. 596; *Morgan* v. *Parham*,
16 Wall. 471, were cases of vessels not abiding within the State
where they were taxed, and were there but temporarily while
engaged in lawful trade and commerce, with their situs at the
home port, where the vessels belonged, and where the owners
were liable to be taxed for the capital invested, and where the
taxes had been paid.   See also *Old Dominion Steamship Com-
pany* v. *Virginia*, 198 U. S. 299.   Here, however, there is no
taxation of any property whatever, either of the boat or the
plaintiff in error.   He is simply called upon to pay a tax for the
privilege of doing the business in which he was engaged—that
is, the retailing of intoxicating liquors at the bar of the ferry-
boat—while that boat was within the jurisdiction of the State
of Tennessee.   The fact that he was so engaged within the
actual territory of that State cannot be blotted out in such a
case as this by any fiction suggested by the counsel for plaintiff
in error.   As we have said, we see no objection to this exercise
of the power of the State, regard being had to the act of Con-
gress already mentioned.

The judgments of the Supreme Court of Tennessee are

*Affirmed.*