CASE 49.—PROSECUTION AGAINST JAMES E. LEMORE FOR
    VIOLATING LOCAL OPTION LAW.—December 11.

## Lemore v. Commonwealth

Appeal from Fulton Circuit Court.

R. J. Bugg, Circuit Judge.

Defendant convicted and appeals—Affirmed.

1. Intoxicating Liquors—Unlawful Sales—Evasion of Local Op-
   tion Law—Evidence—Place of Offense.—Under Ky. Stats.,
   1903, section 2570, providing that no trick or pretense shall
   be allowed to evade the operation of any local option law,
   evidence that a gasoline boat on the Mississippi river landed
   in Kentucky and took on the defendant, and went to the Mis-
   souri side of the river where defendant bought liquor, and
   was then landed off the Kentucky side, no fare being charged,
   showed an evasion of the law within the section justifying
   a conviction.
2. Criminal Law—Jurisdiction—Locality of Offense.—Where ac-
   cused, in Kentucky, went on a boat, and crossed over to the
   Missouri side of the river, and there bought whisky in viola-
   tion of the laws of Kentucky, the courts of Kentucky have
   jurisdiction of the offense, since the States of Kentucky and
   Missouri, under Act Cong. March 6, 1820, ch. 22, 3 Stat. 545,
   have concurrent jurisdiction over the Mississippi river.

ROBBINS, THOMAS & TYLER and F. S. MOORE for appellant.

N. B. HAYS, Attorney General, C. H. MORRIS, W. H. HESTER
and T. N. SMITH for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—
Affirming.

James E. Lemore was indicted for violating the
local option law in Fulton county. The proof on the

Lemore v. Commonwealth.

trial showed that Lemore is the owner of a gasoline boat running on the Mississippi river between Hickman, Ky., and New Madrid, Mo. As the boat was going down the river on one of its trips, it stopped at Mabel, in Fulton county, to put off some freight for William Sutberry. Sutberry got on the boat, and after it had pulled out and was near the Missouri side of the river he bought from Lemore a quart of whisky. The boat then came back to Skaggs landing. which was on the Kentucky side and about a half mile below Mabel. Sutberry got off there. He did not pay any fare on the boat. He got on it for the purpose of buying the whisky. After he got in the river he told Lemore that he would like to have a quart of whisky. Lemore told him that he was coming back on that side after a while; that he had to make another landing down there. The proof is not clear or positive that the boat did land on the Missouri side after it left Mabel and before it landed at Skaggs; but the proof is positive that the whisky was sold when the boat was on the Missouri side of the thread of the stream. Sutberry was not asked to pay any fare. The boat carried freight and passengers. It was 12 feet by 50. Lemore had a United States government license to sell whisky on the boat. Lemore testified among other things, as follows: "A. I don't think I ever sold any in Kentucky, unless Kentucky extends to the other side of the river. I always cross over the river from Kentucky when I have occasion to sell whisky. Q. Can you land at any place on the river? A. At any place where a skiff can go. Q. And if a person hails you anywhere, you go and get him or take his freight on? A. Yes, sir; I would land wherever I was hailed. I never ask a man what he wants until I am out in the river. Q. Where would

you go as a usual thing, just pick a man up? A. I would go to the bank and get him. Q. On the Kentucky side, then where would you go? A. I would back out from the bank and start ahead, and then ask him where he was going, or what he wants, and if he is going to a particular landing I take him there. Q. If he is not going to any particular landing, then what? A. If he tells me that he wants a bottle of beer or whisky, I take him to the Missouri side and sell it to him. Q. Where you take a passenger from the Kentucky shore and go to the Missouri side and sell him liquor and bring him back to the Kentucky shore, do you ever charge these passengers for passage? (Objections by the defendant. Overruled by the court. Exceptions by the defendant.) A. Sometimes. Q. What is the general practice? A. Well, they get on the boat and say they want a quart of whisky, or something like that. I take them out and sell it to them and bring them back to the shore again and don't charge any fare." On this evidence the court gave the jury this instruction: "The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that, while defendant's boat was tied on the Kentucky shore, the witness Sutberry got on the boat for the purpose of purchasing whisky, and that the defendant knew that such was the witness' purpose, and that they then proceeded to cross the river, where the whisky and money were exchanged, and you believe beyond a reasonable doubt that the purchase and sale of said whisky was in the knowledge and purpose of both buyer and seller before they left the Kentucky shore, then the sale took place in Fulton county, Ky., and such action was in law a device to evade the operation of the law against the sale of liquors, without a license to do so."

Sec. 2570, Ky. Stats., 1903, is in these words: "No trick, device, subterfuge or pretense shall be allowed to evade the operation or defeat the policy of the law against selling spirituous, vinous or malt liquors without license or in violation or evasion of any local option laws prevailing in any county, town, city, precinct or municipality of this Commonwealth." In Adair v. Commonwealth, 80 S. W. 1132, 28 Ky. Law Rep. 659, and Merritt v. Commonwealth, 92 S. W. 611, 29 Ky. Law Rep. 184, we had before us facts not unlike those in this case, and we there sustained a conviction. It is manifest from the proof that Sutberry got on the boat for the purpose of buying the whisky, and that he waited until the boat got over on the Missouri side of the stream for the purpose of evading the Kentucky laws. It may also be inferred that Lemore, in carrying Sutberry from Mabel and bringing him back to Skaggs landing, which was as near his home as Mabel, was actuated by the motive of selling him the whisky. The rule with us is that if there is any evidence the question is for the jury.

In view of the conduct and circumstances of the parties, there was sufficient evidence to go to the jury. While the evidence is not precisely the same, when taken as a whole, it as well shows an evasion of the statute as the proof in either of the two cases cited. Lemore is engaged in interstate commerce. The State of Kentucky may not interfere with interstate commerce; but when he takes a man from Kentucky out in the river to sell him whisky, and then brings him back to Kentucky, he is not engaged in interstate commerce. but simply selling whisky in evasion of the laws of Kentucky. Foppiano v. Speed. 199 U. S. 501, 26 Sup. Ct. 138, 50 L. Ed. 288. If he had sold the whisky while his boat was lying at the

bank at Mabel, unquestionably he would be liable, as the thread of the stream is the State line; but when he took the proposed purchaser out beyond the thread of the stream to sell him whisky, and then brought him back to the Kentucky shore, the whole transaction will be looked at, and the sale will be regarded as made not at the point at which the whisky was delivered and the money paid, but on the Kentucky shore, where it was begun, and where it was consummated. In Adair v. Commonwealth, supra, we said: "When an act is made up of a series of events, and is criminal in its result, all the occurrences leading up to the consequence need not be done within the jurisdiction where it is sought to be punished. It is enough if the result in that jurisdiction constitutes an offense. To dispose of liquor by a sale in a local option district in this State under our statutes is an offense, if done by another than a manufacturer. If, to accomplish the criminal acts, the vendor executes parts of it outside of the prohibition district, yet all so connected with some part of the transaction in the district that the result is the same as if all had occurred there, the act is as much a crime against the law as if it had all occurred there. It is not the payment for liquor that is aimed to be prohibited, nor is contracting for liquor the mischief aimed at. It is the furnishing it within the excluded territory that is the particular vice intended to be suppressed."

In addition to this, while by the act of Congress the middle of the main channel of the Mississippi river is the boundary between Kentucky and Missouri, both states are given concurrent jurisdiction over it. Act Cong. March 6, 1820, c. 22, 3 Stat. 545. The center of the Mississippi is also the line

between Illinois and Iowa, and both states are given concurrent jurisdiction over it. In State v. Mullen, 35 Iowa, 199, the defendant had been convicted in Iowa of keeping a house of ill fame on a boat which was anchored east of the middle line of the stream, and contended that the courts of Iowa had no jurisdiction. The court held otherwise, saying: "There is an immense commerce on this great common highway. Water crafts, rafts, and boats, of almost every kind and description, are each day floating upon its waters. Thousands of persons are engaged in this commerce. Contracts are made and obligations assumed for which those boats and crafts may, under certain proceedings, be made liable. Injuries are inflicted upon persons and property by persons while on the river for which they should be held answerable, criminally as well as civilly. If jurisdiction in all such cases was made to depend on the inquiry whether the boat or vessel was on one side or the other of the main channel, whether the injury was inflicted or crime committed east, or west, or north, or south, of such line, it can be readily seen that it would be frequently almost impossible to determine such jurisdiction, and that a mistake in this respect would prove fatal to the action or prosecution, and hence the reason of making the jurisdiction concurrent in all such cases. Such property and persons are as a rule transitory, moving here today and gone tomorrow." In State v. Metcalf, 65 Mo. App. 681, the defendant was indicted in Missouri for keeping a gaming house, and it appeared that the boat was on the Kansas side of the thread of the stream. The conviction was sustained. The River St. Croix is the dividing line between Wisconsin and Minnesota, and the same rule was applied

in Minnesota to an offense committed on the Wisconsin side of the line, and in Wisconsin to an offense committed on the Minnesota side of the stream. State v. George, 60 Minn. 505, 63 N. W. 100; State v. Cameron, 2 Pin. (Wis.) 495. See, also, Welsh v. State, 126 Ind. 71, 25 N. E. 883, 9 L. R. A. 664; Dungan v. State, 125 Ind. 130, 25 N. E. 171, 9 L. R. A. 321; State v. Plants, 25 W. Va. 119, 52 Am. Rep. 211; Sanders v. Anchor Line, 97 Mo. 26, 10 S. W. 595, 3 L. R. A. 390; Wedding v. Meyler, 192 U. S. 573, 24 Sup. Ct. 322, 48 L. Ed. 570, 66 L. R. A. 883.

Judgment affirmed.