## KINNANE *v.* STATE.*

### (*Jackson.*  April Term, 1915.)

**INTOXICATING LIQUORS.  Criminal offenses.  Place of sale.**

Acts 1899, ch. 161, provides that any person selling intoxicating liquors without a license shall be guilty of a misdemeanor. Shannon's Code, sec. 6783, provides that the article as to selling liquors is to be construed liberally to prevent evasions and effectuate the objects had in view. *Held*, that where a person went upon a steamboat on the Mississippi river for the purpose of purchasing, and was received on the boat by those operating it for the purpose of selling him, intoxicating liquors, and the boat thereupon ran into the river across the State line, and after a sale of liquor was made by its barkeeper looped back to the Tennessee shore and landed the purchaser near the point from which he started, the barkeeper was guilty of a violation of the statute.

Acts cited and construed:  Acts 1899, ch. 161.

Cases cited and approved:  Duff v. Commonwealth, 153 Ky., 657; Kinnane v. State, 106 Ark., 280; Lemore v. Commonwealth, 127 Ky., 480.

Cases cited and distinguished:  Adair v. Commonwealth, 89 S. W., 1132; Merritt v. Commonwealth, 92 S. W., 611; Foppiano v. Speed, 199 U. S., 501.

---

### FROM LAUDERDALE.

---

Appeal from the Circuit Court of Lauderdale County.—S. J. EVERETT, Judge.

STEELE & STEELE and E. L. WESTBROOK, for appellant.

---

*As to the place of sale of intoxicating liquor, see note in 44 L. R. A. (N. S.), 437.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Plaintiff in error, Kinnane, was convicted on a charge of selling intoxicating liquor without a license in violation of statute, and has appealed and assigned errors.

Kinnane was keeper of a barroom on a steamboat, the Harry Lee, which plied the Mississippi river from Memphis northward to Ashport, in Lauderdale county.

There was proof tending to show that on one of its trips the boat made its regular landing at Ashport, and that a number of persons went aboard for the purpose, on their part, of making purchases of whisky, among them James Wilson, a witness for the prosecution; that they were received by the boat's management, not as good-faith passengers, but with the confessed intention, on the part of those operating the boat, including Kinnane, of selling them intoxicating liquors; that on approaching the landing at Ashport, the barroom was locked; that the boat was run out into the river and beyond the Tennessee boundary line, when the barroom was opened, a quart of whisky passed in exchange for money to Wilson so on board, whereupon the boat looped back to the Tennessee shore, landed near the point from which it started, and there Wilson, with his purchase, debarked.

Kinnane v. State.

Acts 1899, ch. 161, to which the indictment is referable, provides:

"That any person or persons selling or aiding in selling in any way whatever, intoxicating liquors, without license required by law, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than fifty dollars, nor more than two hundred dollars, and imprisonment in the county jail or workhouse for a period of six months, for each and every offense."

By legislation pronouncement, the laws in relation to illegal sales of liquors "are to be construed liberally, so as to prevent evasions and subterfuges, and to effectuate the objects had in view." Code (Shannon), section 6783.

That portion of the trial judge's instructions to the jury assigned by appellant to be erroneous is:

"If you find from the proof in this case that the State's witness, Wilson, was taken upon the Harry Lee, a steamboat, at Ashport, in Lauderdale county, Tennessee, with others or alone, and that it was his purpose in getting on said boat to buy intoxicating liquors, and was also the purpose of those operating said boat and the defendant in taking him on the same to sell him intoxicating liquors, and that, after he was taken upon said boat or got upon the same in Lauderdale county, that said boat was backed out into the Mississippi river and was run out in said river across the channel of said river and across the western boundary of the State of Tennessee and Lauderdale county and

into the State of Arkansas, and that the defendant was the barkeeper on said boat, and that while said boat and said witness were in said river, across the main channel and in the State of Arkansas, that the defendant sold to the said State's witness whisky or intoxicating liquor, and then said boat was run back to the Tennessee shore, and the said witness or others were permitted to get off of said boat, then I charge you that the defendant would be guilty.''

It is the contention of Kinnane that, under the facts outlined, any sale so made by him was made without the jurisdiction of this State, since the money was passed and the liquor delivered beyond the western boundary line of Tennessee.

We are required by the quoted statute to look behind the technical phase of the transaction if necessary ''to prevent evasions and subterfuges.'' When we do this we think it is apparent that Wilson was taken on the boat for the purpose of evading the statute and defeating ''the objects had in view'' when our liquor laws were enacted. The loop made by the boat (with the exchange of liquor and cash near midstream but just beyond the State line) was intended to serve as a cloak for the real transaction; the purpose from the outset of both vendor and vendee being that Wilson, with the liquor, should be landed back on the Tennessee shore. The delivery of the whisky may well be referred to the Tennessee shore, when substance and not mere form is looked to.

Kinnane v. State.

The court of appeals of Kentucky had to deal with a similar transaction in the case of *Lemore* v. *Commonwealth,* 127 Ky., 480, 105 S. W., 930.   There Lemore, the owner of a gasoline boat, had been convicted of selling intoxicating liquors, in violation of law, to one Sutberry.   It appeared that, as the boat was going down the Mississippi river on one of its trips it stopped at Mabel, a Kentucky landing, to put off freight for Sutberry, who got on the boat, and, after it had drawn near the Missouri short, he bought of Lemore a quart of whisky.   The boat then came back to Skaggs, a landing about one mile below the point where Sutberry embarked.   Sutberry got off there.   His purpose in making the loop was to buy the whisky.   He paid no fare on the boat and was not asked to do so.   In Kentucky, also, it is provided by statute that no trick or subterfuge shall be allowed to evade the operation or defeat the policy of the law against the sale of liquors.   The court in reference to these facts, the statute in relation to evasion, and the earlier cases of *Adair* v. *Commonwealth,* 89 S. W., 1132, 28 Ky. Law Rep., 659, and *Merritt* v. *Commonwealth,* 92 S. W., 611, 29 Ky. Law Rep., 184, said:

"It is manifest from the proof that Sutberry got on the boat for the purpose of buying the whisky, and that he waited until the boat got over on the Missouri side of the stream for the purpose of evading the Kentucky laws.   It may also be inferred that Lemore, in carrying Sutberry from Mabel and bringing him back to Skaggs landing, which was as near his home as

Mabel, was actuated by the motive of selling him the whisky. . . . While the evidence is not precisely the same, when taken as a whole, it as well shows an evasion of the statute as the proof in either of the two cases cited. Lemore is engaged in interstate commerce. The State of Kentucky may not interfere with interstate commerce; but when he takes a man from Kentucky out in the river to sell him whisky, and then brings him back to Kentucky, he is not engaged in interstate commerce, but simply selling whisky in evasion of the laws of Kentucky. *Foppiano* v. *Speed,* 199 U. S., 501, 26 Sup. Ct., 138, 50 L. Ed., 288. If he had sold the whisky while his boat was lying at the bank at Mabel, unquestionably he would be liable, as the thread of the stream is the State line; but when he took the proposed purchaser out beyond the thread of the stream to sell him whisky, and then brought him back to the Kentucky shore, the whole transaction will be looked at, and the sale will be regarded as made, not at the point at which the whisky was delivered and the money paid, but on the Kentucky shore, where it was begun, and where it was consummated. In *Adair* v. *Commonwealth,* supra, we said: 'When an act is made up of a series of events and is criminal in its result, all the occurrences leading up to the consequence need not be done within the jurisdiction where it is sought to be punished. It is enough if the result in that jurisdiction constitutes an offense. To dispose of liquor by a sale in a local option district in this State under our statutes is an offense, if done by another than a man-

Kinnane v. State.

ufacturer. If, to accomplish the criminal acts, the vendor executes parts of it outside of the prohibition district, yet all so connected with some part of the transaction in the district that the result is the same as if all had occurred there, the act is as much a crime against the law as if it had all occurred there. It is not the payment for liquor that is aimed to be prohibited, nor is contracting for liquor the mischief aimed at. It is the furnishing it within the excluded territory that is the particular vice intended to be suppressed.' ''

The above case of *Lemore* v. *Commonwealth* has been reaffirmed in *Duff* v. *Commonwealth,* 153 Ky., 657, 156 S. W., 150.

In the case of *Kinnanne* v. *State,* 106 Ark., 280, 153 S. W., 583, the facts specially found were that the defendant was in charge of a room, on the same boat, the Harry Lee, in which intoxicating liquors were held for sale; that the steamer landed on the Arkansas shore and received the prosecuting witness for the purpose of selling him liquor; that witness was carried to a point east of the boundary line of Arkansas in the Mississippi river, where the sale was made, and the witness was then returned and discharged at said landing in Arkansas. The court held, in an opinion by Mr. Chief Justice McCulloch, that a finding that the intoxicating liquors were thus kept for sale in violation of law would suffice to support the judgment of conviction. In Arkansas there is a statute in respect of sales

132 Tenn.22

of intoxicating liquors by device.   See, also, *Kinnanne v. State,* 106 Ark., 337, 153 S. W., 264.

We are therefore of opinion that the circuit judge committed no reversible error in the charge so given and challenged and that the judgment should be affirmed.   So ordered.

MR. JUSTICE BUCHANAN dissents.